NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0248n.06
No. 22-1995

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Jun 01, 2023
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| RICHARD C. POE II, et al., | ) | |
| Plaintiffs-Appellants, | ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN |
| v. | ) ) ) | |
| FCA US, LLC, | ) ) | |
| Defendant-Appellee. | ) ) | OPINION |

Before: GRIFFIN, KETHLEDGE, and THAPAR, Circuit Judges.

KETHLEDGE, Circuit Judge. Richard Poe sued FCA (the current owner of the Chrysler brand of cars), alleging it had been involved in a 2015 conspiracy to take control of two of Poe's car dealerships. The district court dismissed Poe's claims as time-barred. We agree as to five of Poe's claims, but reverse and remand for further consideration of the other two.

I.

Father and son Dick and Richard Poe together ran three car dealerships in Texas: one Toyota franchise and two Chrysler franchises. The Chrysler dealerships were limited partnerships, in which a family corporation—Poe Management—served as general partner. Dick directed Poe Management and managed the Chrysler franchises; Richard was Poe Management's sole shareholder.

In May 2015, Dick became seriously ill. Unbeknownst to Richard, Dick's accountant (Anthony Bock), assistant (Karen Castro), and attorney (Paul Sergent) visited Dick in the hospital

and convinced him to issue 1,100 new shares in Poe Management to himself. That issuance reduced Richard's stake in Poe Management from 100% to 47.6%. Days after issuing the new shares, Dick died—leaving Bock and Castro the co-executors of his estate.

Bock and Castro thereafter appointed themselves directors of Poe Management and elevated Sergent to officer. Together, the three removed Richard from all his positions in Poe Management and in the Chrysler dealerships. Meanwhile, Chrysler reached out to arrange a new manager for the dealerships, and Castro proposed her colleague Gery Reckelbus. Chrysler's franchise agreement with Dick required it to offer Richard that managerial position ("principal dealer") in the event of Dick's death. Yet, Richard says, Chrysler refused even to meet with him and appointed Reckelbus in his place. By the summer, Bock, Castro, and Sergent had completely ousted Richard from both dealerships.

In probate court, Richard argued that Dick had lacked capacity to issue shares, and, in the alternative, that Dick had issued the shares in violation of his fiduciary duty to Richard and Poe Management. That case went to trial in May 2017; a jury determined that the share issuance was invalid; and Bock, Castro, and Sergent appealed. In July 2017, while the state court's judgment was stayed pending appeal, Poe filed a civil racketeering suit against the alleged conspirators in federal court. In September 2018, the district court dismissed that case for failure to state a claim. *Poe v. Bock*, 2018 WL 4275839 (W.D. Texas, Sept. 7, 2018). In the state litigation, meanwhile, the Texas Court of Appeals affirmed the jury's verdict. *Matter of Est. of Poe*, 591 S.W.3d 607 (Tex. App. 2019). But the Texas Supreme Court granted review of that decision—and in 2022, it remanded the matter for retrial based on a mistake in the trial court's jury instructions. *Matter of Est. of Poe*, 648 S.W.3d 277 (Tex. 2022). The case remains pending.

On July 19, 2022, Poe brought this suit against Chrysler, asserting a statutory breach of fair dealing claim, a contract claim, two tortious-interference claims, a fraud claim, a conversion claim, and a civil-conspiracy claim. Chrysler moved to dismiss on statute-of-limitations grounds. Poe argued that several state-law exceptions to the statute of limitations applied to each of his claims. The district court dismissed the suit, and this appeal followed.

II.

We review de novo the district court's dismissal under Rule 12(b)(6). *Brent v. Wayne County Dep't. of Human Serv's*, 901 F.3d 656, 675 (6th Cir. 2018). The parties agree that Texas law applies. *See GBJ Corp. v. Eastern Ohio Paving Co.*, 139 F.3d 1080, 1085 (6th Cir. 1998).

A.

As an initial matter, we consider whether we have jurisdiction over Poe's statutory claim. *See Answers in Genesis of Ky., Inc.*, *v. Creation Ministries Int'l, Ltd.*, 556 F.3d 459, 465 (6th Cir. 2009). Poe argues that Chrysler violated the good faith and fair dealing provision of the Texas Occupational Code. *See* Tex. Occ. Code § 2301.478(b). But the Texas Motor Vehicle Board has "exclusive original jurisdiction" over "claims and issues the Code governs." *Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 223 (Tex. 2002); Tex. Occ. Code, § 2301.151. Poe was therefore required to seek relief from the Board before filing suit. *Subaru*, 84 S.W.3d at 223. He concededly failed to do so here, so we lack jurisdiction over his statutory good-faith claim.

B.

As to the remaining claims, the only issue is whether Poe timely filed them. In Texas, a two-year limitations period governs claims for conversion and tortious interference, and a four-year limitations period governs claims for fraud and breach of contract. *See Academy of Allergy*

*& Asthma in Primary Care v. Quest Diagnostics, Inc.*, 998 F.3d 190, 201 (5th Cir. 2021) (tortious interference); *Pollard v. Hanschen*, 315 S.W.3d 636, 641 (Tex. App. 2010) (conversion); Tex. Stat. § 16.004(a)(4) (fraud); *Stine v. Stewart*, 80 S.W.3d 586, 592 (Tex. 2002) (contract). Poe's civil-conspiracy claim is a "derivative tort that depends on participation in some underlying tort"; it takes the limitations period of the underlying tort. *Agar Corp., Inc. v. Electro Circuits Int'l, LLC*, 580 S.W.3d 136, 138 (Tex. 2019).

1.

As a general matter, "a claim accrues when injury occurs." *ExxonMobil Corp. v. Lazy R. Ranch, LP*, 511 S.W.3d 538, 542-43 (Tex. 2017). Here, Poe's fraud, tortious interference, and breach of contract claims each rely on the same injury: Reckelbus's appointment as principal dealer. Poe says that, between May and August 2015, Chrysler refused to speak with him, refused to give him access to important documents, and fraudulently concealed Block, Castro, and Sergent's plot to take over the dealerships. Then, on August 21, 2015, Chrysler approved Reckelbus's appointment as new principal dealer of both dealerships—in spite of its alleged contractual obligation to offer Poe that position first. Thus, Poe's injury occurred no later than August 21, 2015. As Poe acknowledges, that means these claims are untimely unless an exception to the statute of limitations applies.

Poe first argues that the discovery rule delayed accrual until July 27, 2017—the date he filed his federal racketeering suit—because, he says, that is the first day he "displayed knowledge" of Chrysler's involvement. But the discovery rule tolls a statute of limitations until the date "a claimant *learns* of a wrongful injury"—not the date he first displays knowledge of it. *Exxon Corp*, 348 S.W.3d at 207 (emphasis added). In Texas, moreover, the discovery rule applies only when "the plaintiff's injury is both inherently undiscoverable and objectively verifiable." *Wagner &*

*Brown, Ltd. v. Horwood*, 58 S.W.3d 732, 734 (Tex. 2001). Here, Chrysler's failure to appoint Poe obviously was not "inherently undiscoverable"—Poe knew that he did not manage the dealerships. *Id*. Thus, the discovery rule does not apply.

Poe also suggests these claims were timely because Chrysler fraudulently concealed its involvement. But Chrysler could not have "concealed" its refusals to communicate with Poe or to appoint him principal dealer. Besides, Poe undisputedly learned of his injury when Chrysler appointed Reckelbus in August 2015. And "once a claimant learns of a wrongful injury, the statute of limitations begins to run even if the claimant does not yet know the specific cause of the injury [or] the party responsible for it." *Exxon Corp.*, 348 S.W.3d at 207.

Next, Poe argues that the "legal impediment rule" continues to toll the statute of limitations on all of his claims until the state courts issue a final determination as to the validity of the share issuance. This rule applies when pending legal proceedings prevent a plaintiff from "exercising his legal remedy" as to a particular claim. *Hughes v. Mahaney & Higgins*, 821 S.W.2d 154, 157 (Tex. 1991). Specifically, the rule prevents duplicative litigation in cases where the outcome of a first suit would determine the viability of a second suit. *Id.; see also Hunt Steed v. Steed*, 908 S.W.2d 581, 585 (Tex. App. 1995). For example, the legal-impediment rule tolls the limitations period on a suit for overdue rent during litigation over title to the relevant land. *Hughes*, 821 S.W.2d at 157 (discussing *Fields v. Austin*, 30 S.W. 386, 387 (Tex. Civ. App. 1895)). Title to land is an element in the action for rent, so litigating the cases simultaneously would risk inconsistent results and waste judicial resources. *See Fields,* 30 S.W. at 387; *El Pistolon II, Ltd., v. Levinson Alcoser Assoc's, LP*, 627 S.W.3d 494, 499 (Tex. App. 2021).

According to Poe, this suit's viability depends on the outcome of the share issuance litigation. *Hunt Steed*, 908 S.W.2d at 585. That argument is meritless with respect to Poe's tortious

interference, breach of contract, and fraud claims. The key issue in those claims is whether Chrysler wrongfully failed to appoint Poe principal dealer. As Poe himself emphasizes, the franchise agreements with Chrysler—not Poe Management's shareholders—governed the dealerships' management after Dick Poe's death. And the state litigation will determine only who rightfully owns Poe Management. The two issues are therefore independent, and the legal impediment rule does not apply. *Hughes*, 821 S.W.2d at 157. No exception to the statute of limitations applies to these claims, so we agree with the district court that Poe filed them too late.

2.

That leaves Poe's claims for conversion and civil conspiracy, which rely on a different injury. Poe argues that, because he is the sole owner of Poe Management's stake in the Chrysler dealerships, Chrysler engages in conversion each time it participates in the sale of a car or insurance policy at those dealerships. Ordinarily, "the limitations period for a conversion claim begins to run at the time of the unlawful taking." *Wells Fargo Bank Nw.*, *N.A. v. RPK Cap. XVI*, *LLC*, 360 S.W.3d 691, 700 (Tex. App. 2012). But Poe cannot assert his claim for conversion without establishing that he "was the owner of the property, had legal possession of it or was entitled to possession." *Whitaker v. Bank of El Paso*, 850 S.W.2d 757, 760 (Tex. App. 1994). Thus, Poe's ownership of the dealerships' assets (the subject of the share-issuance litigation) is an element of his conversion claims. Forcing Poe to litigate the ownership issue twice would risk inconsistent results and waste judicial resources. The legal-impediment rule therefore tolls the limitations period on his conversion claim until the state courts issue a final judgment in the pending shares litigation. *Hughes*, 821 S.W.2d at 157; *Fields*, 30 S.W. at 387. Poe's conversion claim is timely.

Poe's civil conspiracy claim is based in part on his conversion claim. According to Poe, Chrysler conspired with Bock, Castro, and Sergent "to accomplish the unlawful purposes" alleged in the complaint, including the alleged conversion of dealership property. And conspiracy takes its limitations period from the underlying tort. *Agar Corp.*, 580 S.W.3d at 148. Thus, Poe's civil conspiracy claim is timely, but only as to the tort of conversion.

Chrysler objects that Poe forfeited any argument under the legal-impediment rule because he referred to that rule as "*Hughes* tolling" before the district court. But "the equitable tolling principle discussed in *Hughes*" is an application of the legal-impediment rule, so that argument is meritless. *El Pistolon II*, 627 S.W.3d at 499. Chrysler also argues that the legal-impediment rule applies only when "a person is barred by an injunction or similar operation of law" from filing the second suit. As *Hughes* itself made clear, however, the rule also applies when the viability of the second suit depends on the outcome of the first. *Hughes*, 821 S.W.2d at 156. That is the situation here with respect to Poe's conversion and civil conspiracy claims.

* * * *

We reverse the district court's dismissal of Poe's conversion and civil conspiracy claims and remand for further proceedings consistent with this opinion.